[56 NYS3d 568]

In the Matter of MICHAEL J. KOHN, an Attorney, Respondent.
GRIEVANCE COMMITTEE FOR THE SECOND, ELEVENTH, AND
THIRTEENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, July 5, 2017

### APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Mark F. DeWan* of counsel), for petitioner.

*Michael A. Gentile*, New York City, for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (hereinafter the petitioner) served the respondent with a petition dated February 22, 2016, containing eight charges of professional misconduct. After a preliminary conference on July 14, 2016, and a hearing on November 1, 2016, the Special Referee issued a report dated January 5, 2017, in which he sustained all charges. The petitioner now moves to confirm the Special Referee's report, and to impose such discipline as the Court deems just and proper. In response, the respondent's counsel has submitted an answer joining in the petitioner's motion to confirm, and requesting that the Court impose a public censure or, at most, a three-month suspension.

### The Petition

Charges one through six each allege that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

Charge One—The Scala Funds

In or about August 2009, the respondent was retained by John Scala and Mina Nevradakis-Scala (hereinafter the Scalas) to represent them in the sale of a house they owned in Manhasset. The respondent received a down payment check in the amount of $78,500 from the purchaser, which he deposited on August 14, 2009, into his escrow account at Capital One

Bank, account number ending 3243, entitled "Kohn & Kohn, IOLA-Attorney Escrow Account." By the terms of the contract of sale, the respondent was required to hold the down payment in escrow until the closing of title, which occurred on October 1, 2009. However, by August 31, 2009, the respondent had depleted the balance in his escrow account to the sum of $23,970.73.

At the closing on October 1, 2009, it was agreed that the respondent would hold the net proceeds of the sale in his escrow account until the conclusion of the Scalas' divorce, which did not occur until October 2011. On October 5, 2009, an electronic funds transfer in the amount of $297,709.46 was made into the respondent's escrow account, which together with the $78,500 down payment brought the total that the respondent was required to hold in the escrow account on behalf of the Scalas to the sum of $376,209.46. However, by November 10, 2009, the respondent had depleted the balance in his escrow account to the sum of $346,323.70.

On September 29, 2010, the Scalas executed a stipulation in connection with their pending divorce action, which authorized the respondent to release a total of $37,650.73 from the Scala escrow funds. After making the authorized payments, the respondent was required to maintain the sum of $338,558.73 in the escrow account for the Scalas. However, by September 22, 2011, prior to any further disbursement on behalf of the Scalas, the respondent had depleted the balance in his escrow account to the sum of $5,288.40.

Charge Two—The Friedmutter/Grocholski Sale

In or about August 2011, the respondent was retained by Douglas Friedmutter and Basia Grocholski to represent them in the sale of a condominium they owned in Brooklyn. The respondent received a down payment check in the amount of $72,500 from one of the purchasers, which he deposited into the escrow account on August 14, 2011. By the terms of the contract of sale, the respondent was required to hold the $72,500 down payment in escrow until the closing of title, which occurred on November 15, 2011. However, by September 15, 2011, the respondent had depleted the balance in his escrow account to the sum of $70,608.57.

Charge Three—The Estate of Rogelio Villanueva

In 2011, the respondent represented Maria Yolanda Lopez Reyes and the children of Rogelio Villanueva in a matter in the Surrogate's Court, Kings County, entitled *Estate of Rogelio Vil-*

*lanueva*. On or about June 2, 2011, the respondent received a check in the amount of $166,285.62 from the Public Administrator of the County of Kings, payable to one of the decedent's children. On or about September 23, 2011, the respondent deposited the check into his escrow account. By November 18, 2011, prior to any disbursement on behalf of the Villanueva estate, the respondent had depleted the balance in his escrow account to the sum of $6,484.01. On March 12, 2012, the respondent disbursed the sum of $166,000 on behalf of the Villanueva estate.

Charge Four—The Agopian Sale

In or about October 2011, the respondent was retained by Annig A. Agopian, trustee of the Annig A. Agopian revocable trust, to represent her in the sale of a house the trust owned in Woodhaven. The respondent received a down payment check in the amount of $10,000 from the purchaser, which he deposited into his escrow account on October 13, 2011. By the terms of the contract of sale, the respondent was required to hold the down payment in escrow until the closing of title, which occurred on December 15, 2011. However, by November 1, 2011, the respondent had depleted the balance in his escrow account to the sum of $6,584.01.

Charge Five—The Bermello Funds

On or about July 26, 2012, the respondent was retained by Maria Bermello to represent her in a personal injury case. In May 2013, the case was settled. On May 8, 2013, Farmers Assurance Company of America issued a check in the amount of $9,000 payable to Maria Bermello and Kohn & Kohn, which represented the settlement proceeds. On May 15, 2013, the respondent deposited the settlement proceeds into his escrow account. Before this deposit, the balance in the respondent's escrow account was the sum of $1,309.15.

Prior to making any disbursement to Bermello, the respondent drew the following four checks to himself:

| Date | Check# | Amount |
|------|--------|--------|
| May 16, 2013 | 2557 | $ 6,500 |
| May 17, 2013 | 2510 | $ 2,400 |
| May 17, 2013 | 2535 | $ 2,000 |
| May 29, 2013 | 2163 | $ 800 |

By May 30, 2013, prior to any disbursement to Bermello of her share of the settlement proceeds, the respondent had depleted the balance in his escrow account to the sum of $45.67.

Charge Six—The Colombo Sale

In or about February 2014, the respondent was retained by Martin L. Colombo to represent him in a real estate transaction. The respondent received a down payment check in the amount of $59,500 from the purchaser, which he deposited into his escrow account on February 14, 2014. By the terms of the contract of sale, the respondent was required to hold the down payment in escrow until the closing of title, which occurred on June 6, 2014. However, by May 30, 2014, the respondent had depleted the balance in his escrow account to the sum of $55,972.18.

Charge seven alleges that the respondent commingled personal and/or business funds with funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

Between August 2009 and June 2014, the respondent maintained funds entrusted to him as a fiduciary, incident to his practice of law, in his escrow account. During that period, the respondent deposited personal and/or business funds into his escrow account while fiduciary funds were also on deposit in the account.

Charge eight alleges that the respondent failed to maintain a ledger book or similar record of deposits into and withdrawals from his escrow account, in violation of rule 1.15 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

The respondent failed to maintain a ledger book or similar record for his escrow account showing: the source of all funds deposited therein; the names of all persons for whom funds were held; the amount of such funds; the charges or withdrawals from the account; and the names of all persons to whom such funds were disbursed.

In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the petitioner's motion to confirm the Special Referee's report is granted.

In mitigation, the respondent testified concerning certain health issues he has endured, including multiple surgeries, which distracted him from his law practice. In December 2007, the respondent was diagnosed with thyroid cancer, and underwent a surgical procedure in March of 2008, followed by radioactive iodine treatment. He also testified that his brother's

death from cancer produced "great fear, anxiety and depression as a result of having to deal with the thought of dying of cancer and, . . . leaving a family without a father and a husband." During this period, the respondent did not go to his office, and he states that he was not "paying attention to the balances" in the escrow account. In October of 2011, when it came time to disburse the Scala funds, the respondent realized he needed to replenish a shortfall in the escrow account, so he deposited personal funds in the sum of $133,000 into the account; $80,000 from loans from his friends and $53,000 from the sale of his mother-in-law's jewelry. The respondent expressed remorse for his actions, has instituted remedial procedures to avert a reoccurrence, and offered evidence of his good character. In view of the evidence in mitigation, the respondent's counsel requests the Court to impose a public censure or, at most, a three-month suspension.

Notwithstanding the aforementioned mitigating factors, it cannot be said that the respondent's misconduct was isolated. Instead, the record demonstrates that he engaged in a course of misconduct for an extended period. From August 2009 through in or about May 2014, he misappropriated substantial sums of client funds in six client matters, commingled personal funds with funds entrusted to him as a fiduciary, and failed to keep required records. The evidence further confirms that the respondent disbursed clients' funds for his own purposes. Although the respondent infused personal funds into the escrow account to restore the misappropriated funds, it is noted that, in part, he used funds belonging to other clients to complete disbursements in the Scala and Friedmutter matters. Moreover, the respondent continued to misuse client funds during a pending grievance investigation. Indeed, as noted by the Special Referee, the respondent's misconduct continued after the first examination under oath conducted by the petitioner on May 9, 2013, when he misappropriated the Bermello settlement funds later that month, and after the second examination under oath conducted by the petitioner on February 19, 2014, when he misappropriated the Colombo funds in May 2014. We have also considered as an aggravating factor the respondent's disciplinary history, which includes a prior letter of caution.

Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of five years (see Matter of Katz, 61 AD3d 213 [2009]).

148

Eng, P.J., Mastro, Rivera, Dillon and Sgroi, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Michael J. Kohn, is suspended from the practice of law for a period of five years, commencing August 4, 2017, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than February 4, 2022. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (a), and (4) otherwise properly conducted himself; and it is further,

Ordered that the respondent, Michael J. Kohn, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Michael J. Kohn, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Michael J. Kohn, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).