Matter of Pollina (2019 NY Slip Op 01775)





Matter of Pollina


2019 NY Slip Op 01775


Decided on March 13, 2019


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 13, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
REINALDO E. RIVERA
MARK C. DILLON
LEONARD B. AUSTIN
JEFFREY A. COHEN, JJ.


2016-01950

[*1]In the Matter of Steven M. Pollina, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Steven M. Pollina, respondent. (Attorney Registration No. 2687796)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By decision and order on motion dated July 6, 2016, this Court authorized the Grievance Committee to institute and prosecute a disciplinary proceeding against the respondent based upon the acts of professional misconduct set forth in a verified petition dated February 25, 2016, and referred the issues raised to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on August 23, 1995.



Catherine A. Sheridan, Hauppauge, NY (Michele Filosa of counsel), for petitioner.
Howard Benjamin, New York, NY, for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a verified petition dated February 25, 2016, containing three charges of professional misconduct. After a preliminary conference on March 1, 2018, and a hearing on May 3, 2018, the Special Referee issued a written report dated June 18, 2018, sustaining all charges. The petitioner now moves to confirm the Special Referee's report and to impose such discipline as the Court deems just and proper. The respondent, by counsel, cross-moves to confirm the Special Referee's report and to impose a public censure, and for such other relief as the Court may deem just and equitable.
Undisputed Facts
By virtue of a stipulation dated March 1, 2018, executed by counsel for the parties, the undisputed facts are as follows:
1. In or before 2006, the respondent was a solo practitioner predominantly representing lenders in residential mortgage transactions.
2. In or before 2006, the respondent maintained trust accounts incident to his law practice, including the following:
IOLA account at HSBC Bank ending in 2746 (hereinafter HSBC Account)
IOLA account at Chase Bank ending in 5265 (hereinafter Chase Account 1)
IOLA account at Chase Bank ending in 6865 (hereinafter Chase Account 2)
IOLA account at Chase Bank ending in 1065 (hereinafter Chase Account 3) 3. In or about 2006, the respondent ceased using the above-referenced four trust [*2]accounts.
4. At the time the respondent ceased using the four trust accounts, the aggregate balance in the accounts was $147,423.55, as follows:
Account Balance
HSBC Account $30,196.83
Chase Account 1 $44,638.04
Chase Account 2 $30,000.00
Chase Account 3 $42,588.68
5. The $147,423.55 on deposit in the four accounts were funds entrusted to the respondent as a fiduciary in connection with his practice of law in or prior to 2006.
6. At the time the respondent ceased using the accounts, and at all times relevant herein, he could not identify the source or purpose of the aggregate sum of $147,423.55 on deposit in the four trust accounts.
7. The respondent had no claim to the $147,423.55 on deposit in the four trust accounts.
8. Between in or about 2006 and 2013, the respondent maintained and preserved the $147,423.55 in the four accounts.
9. Between in or about 2006 and 2013, no person or entity made any claim to any portion of the $147,423.55 on deposit in the four accounts.
10. Between in or about August 2013 and April 2015, the respondent drew the following checks, totaling $108,600, against the four accounts, payable to himself for his personal use and benefit:
AccountAmount of Check Date Presented
HSBC Account$7,500 August 30, 2013
HSBC Account$10,000September 23, 2013
HSBC Account$6,000 January 21, 2014
Chase Account 1$20,000April 14, 2014
Chase Account 1$4,600 September 2, 2014
Chase Account 1$8,000 October 15, 2014
Chase Account 1$5,000 December 1, 2014
Chase Account 1$2,000 December 8, 2014
Chase Account 1$2,000 December 15, 2014
Chase Account 1$2,500 January 29, 2015
Chase Account 2$2,500 January 29, 2015
Chase Account 2$2,500 March 5, 2015
Chase Account 2$5,000 March 20, 2015
Chase Account 2$5,000 April 2, 2015
Chase Account 3$26,000April 15, 2015
11. On each of the aforesaid checks that the respondent issued to himself, he inserted a fictitious "client" name on the memo line of the check.
The Charges
Based upon the undisputed facts, charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary; charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; and charge three alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of rules 1.15(a) and 8.4(c) and (h) of the Rules of Professional Conduct (22 NYCRR Part 1200), respectively.
The Hearing
The respondent testified that from in or about 1995, he maintained an escrow account at HSBC Bank. The respondent admitted that he "messed up" this escrow account and was "unable to reconcile the account easily because [he] had a lot of transactions." While he monitored the account to ensure receipt of loan funds, he failed to properly reconcile the account and, thus, was unaware of any outstanding checks. Rather than making an effort to reconcile the HSBC escrow account, the respondent decided to stop using that account, and simply open a new escrow account at Chase Bank (Chase Account 1). According to the respondent, he didn't think that there was anything wrong with the HSBC account, "only that [he] . . . was unable to take the appropriate time to reconcile it."
Thereafter, the respondent did not change his record-keeping practices, accumulated a balance in Chase Account 1, and failed to reconcile the account to determine whose funds were on deposit. Once again, he opened a new escrow account at Chase Bank (Chase Account 2). There came a time when the respondent abandoned Chase Account 2, in which he had an accumulated balance of unidentified client funds, and opened a third escrow account at Chase Bank (Chase Account 3). Each time the respondent opened a new escrow account, he did not close the prior escrow account. By 2006, the respondent had accumulated $147,423.55 in the four escrow accounts, and he had made no effort to fully reconcile those accounts to determine the rightful owners of the escrow funds.
From 2006 until 2013, the respondent continued to maintain $147,423.55 in the four escrow accounts. He admitted that the escrow funds do not belong to him, and claims that he has not been contacted by anyone seeking their funds.
Beginning in August 2013, the respondent began issuing checks to himself from the HSBC escrow account, and later from the Chase escrow accounts, wrongfully invading funds entrusted to him as a fiduciary. Between August 30, 2013, and April 15, 2015, the respondent issued 15 checks to himself, totaling $108,600. On the memo line of each check, the respondent placed a name so it would appear that the check was being written for a client matter. In reality, there was no connection to the "client" name on the memo line. The respondent admitted that he was not entitled to the escrow funds, and that he used the escrow funds for his own personal purposes to pay his living expenses.
The respondent's misappropriation came to light during the course of an investigation based upon a report from the Lawyers' Fund for Client Protection indicating that a check issued from the HSBC escrow account had been dishonored in March 2015. Thereafter, the respondent restored the misappropriated funds to an active escrow account. Subsequently, in or about August 2017, the respondent, through counsel, sent a check in the sum of $147,423.55, representing the accumulated escrow funds, to the Lawyers' Fund for Client Protection.
Findings and Conclusion
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the branches of the petitioner's motion and the respondent's cross motion seeking to confirm the report of the Special Referee are granted.
In seeking the imposition of a public censure, the respondent contends, inter alia, that his misconduct occurred during a period when he experienced personal stresses, including his father's illness, financial difficulties, and his own health issues, and that there has been no harm to clients. In mitigation, among other things, the respondent demonstrated remorse, cooperated with the petitioner, provided evidence of his good character, restored the misappropriated funds, and deposited the accumulated escrow funds with the Lawyers' Fund for Client Protection.
Notwithstanding the mitigation advanced, it cannot be said that the respondent's misconduct was isolated. Instead, the record demonstrates that he engaged in a course of misconduct for an extended period (from in or about 1995 through 2015), as the respondent failed to abide by the rules governing the proper maintenance of an attorney's escrow account. Beginning with the HSBC escrow account, the respondent admits that he could not find the time to reconcile the account, and at some point, he had a balance, but he could not identify the owners of the funds. Rather than taking the time to reconcile the account, the respondent decided to stop using the HSBC escrow account, and to simply open a new escrow account, leaving the accumulated funds in the HSBC account. Thereafter, failing to change his record-keeping practices, he again accumulated funds in each subsequent escrow account opened at Chase Bank, and failed to ever determine the rightful owners of the funds. By 2006, the accumulated escrow funds on deposit in the four escrow accounts totaled $147,423.55. While the respondent claims that he was never contacted about these funds, there is no evidence in the record that he attempted to determine who the interested parties were, or put them on notice that their funds remained with him.
Between August 30, 2013, and April 15, 2015, the respondent knowingly invaded the escrow accounts, and removed $108,600 for his own personal benefit. The respondent's actions in taking the escrow funds were deliberate, as he was fully aware that the funds were not his funds. His actions were also deceptive, as he included a fictitious client name on the memo line on each check in an effort to give the appearance that the check was issued in relation to a client matter. Notably, these disbursements were made at a time when the respondent was experiencing financial [*3]difficulties, and he did not return the misappropriated funds to an escrow account until after the grievance investigation had been initiated.
Although the respondent's counsel contends that there has been no harm to clients in this matter, such contention fails to recognize that it is unlikely that the funds deposited with the Lawyers' Fund for Client Protection will ever be returned to their rightful owners, as the respondent has neither identified the victims of his misappropriation, nor put them on notice that their funds remained with him. It was the respondent's responsibility to keep accurate records, to reconcile the account, and to disburse those funds appropriately. His failure to do so has resulted in substantial funds not being returned to the rightful owners.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of five years (see Matter of Kohn, 152 AD3d 142; Matter of Katz, 61 AD3d 213).
MASTRO, J.P., RIVERA, DILLON, AUSTIN and COHEN, JJ., concur.
ORDERED that those branches of the petitioner's motion and the respondent's cross motion which were to confirm the Special Referee's report are granted; and it is further,
ORDERED that the respondent, Steven M. Pollina, is suspended from the practice of law for a period of five years, commencing April 12, 2019, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than October 12, 2023. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Steven M. Pollina, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Steven M. Pollina, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Steven M. Pollina, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court